UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sharon Lindsay as Administratrix of the Estate of Gloria M. Parkin,<br>*Plaintiff,*<br><br>v.<br><br>Mark C. Clemm, Katie M. Clemm, and Clemm and Associates LLC,<br>*Defendants.* | Civil Action No. 2:24-cv-482 |

**Plaintiff's Response in Opposition to Defendants' Motion to Extend**

Plaintiff Sharon Lindsay, as Administratrix for the Estate of Gloria M. Parkin, submits this brief in opposition to Defendants' motion to extend discovery in this RICO action.

On the day the 90-day discovery deadline in this matter expired, *see* ECF 16, Defendants have filed a cursory motion to extend discovery in order to depose non-parties, one of whom they recently already deposed in the parallel state foreclosure litigation. The "good cause" they claim is that they have been "diligently working" to respond to burdensome discovery requests from Plaintiff and that recent written responses they just received are the occasion for needing to take these depositions, but the facts surrounding discovery demonstrate a very different picture. This motion—like Defendants original request for 6 months of discovery made in the Rule 26(f), their groundless motion to remove the case from the arbitration program and their meritless summary judgment motion—are all part of a deliberate effort to delay this action long enough to get a favorable disposition in the state action. The only relevant issue is whether they have presented any legitimate "good cause" for their hoped-for delay. Because they have not, this motion should be denied.

1

I.  **Background**

   A.  **Facts Regarding the Loan and the Parallel Foreclosure Action**

The underlying legal dispute concerns a 2013, mortgage-secured loan on 8527 Michener Avenue, Philadelphia, PA 19150 (the "Property"), owned and occupied by Ms. Gloria M. Parkin from 1975 until her death in October 2023. The mortgage secured a loan made to Ms. Parkin's son, Dwayne Steers, for $60,000 at a 13% APR, with monthly interest-only payments of $650 to be due for 5 years, at which point the $60,000 principal of the loan would be due in full.[1] The lender was an LLC controlled by Defendant Mark Clemm, an attorney who, at the time the present action was commenced, was trying to foreclose on the Property through his law firm, Defendant Clemm and Associates. *See KMC Associates, LLC v. Gloria Parkin*, Trustee, Dec. Term 2022, No. 273 (Phila. Com. Pl.).[2]

Most of the payments on that loan were made by the elderly Ms. Parkin, payments which in this litigation are alleged to have been usurious. On February 1, 2024, Plaintiff Sharon Lindsay, the daughter of Ms. Parkin, filed this action on behalf of her mother's estate, alleging that the Clemms directed an enterprise consisting of several LLCs with which they made and collected on a loan that carried an interest rate more than two times the legal rate, subjecting them to the treble-damage remedy imposed by RICO and by Pennsylvania law. ECF 1. Defendant Mark Clemm was served with this Complaint on February 20, and Defendants Katie Clemm and Clemm and Associates LLC were served with this Complaint on February 23. ECF 4, 5, 6.

---

[1] Plaintiff believes that the $60,000 against which interest can be charged as the "bona fide principal" under Pennsylvania law is a lesser amount, and the actually charged interest rate was therefore even higher than 13%. Compl. ¶¶ 52-53, ECF 1.

[2] The plaintiff LLC in the foreclosure action, KMC Associates, is wholly owned by Clemm's daughter, Katie, a co-Defendant in this matter and also a lawyer with Defendant Clemm and Associates LLC. Clemm assigned the mortgage from WCT to KMC Associates prior to initiating the foreclosure.

After being served with the Complaint in this action, Clemm took the deposition of Dwayne Steers in the foreclosure action, on February 27, 2024. *See* Ex. A, Excerpts of Dwayne Steers Dep. (Feb. 27, 2024). Under questioning from Clemm about the purpose of the loan, Steers testified he sought and obtained the loan to pay for personal debts, mainly medical debts related to his wife's treatment for cancer, and, and after her death, to provide funds for a move to the Bahamas where he had family. Steer Dep. 32:15-33:4; 62:21-63:14; 65:8-15; 77:4-78:22. The significance of this line of questioning is that the Clemms contend that this was a business loan made to support Steers' former HVAC company which, if true, would create a defense in this action and would, they hope, provide a clear path to enable them to foreclose on the Property. In addition to the Steers deposition, discovery in the state court action has included an extensive document production and the deposition of Katie Clemm.

**B.  The Facts Regarding Discovery in this Action**

Defendants filed their Answer in this case on April 11, ECF 9, after being granted a stipulated 30-day extension of time to file, ECF 7. On April 29, the Court issued an Arbitration Notice setting a discovery deadline of 90 days from the date the Answer was filed—which was July 10. ECF 16.

In the Rule 26(f) report submitted by the parties, Defendants requested 180 days to complete discovery. ECF 15 at 5. Defendants' stated but cursory basis for the lengthened discovery was "the complexity of Plaintiff's civil RICO claims." *Id.* Defendants also argued for an extended discovery period for the inappropriate reason that "Plaintiff's requested relief in this case may ultimately be barred pending resolution of the state court foreclosure action." *Id.*

In the present case, Plaintiff has responded promptly and diligently to Defendants' discovery requests, while Defendant has largely refused to produce discovery relevant to the RICO enterprise elements. On April 24, Plaintiff served a single set of interrogatories on each Defendant and a single

3

set of document requests applicable to all three.[3] On June 4, Plaintiff served the deposition notice for Defendants Mark Clemm and Clemm and Associates LLC for July 2.[4] *Plaintiff has not served any other discovery in this case.* Plaintiff has, however, repeatedly pointed out deficiencies in Defendants' production. *See* Ex. F, Discovery Deficiency Letter (June 11); Ex. G, Meet and Confer Follow-up Letter (June 20); Ex. H, M. Clemm Deposition Follow-up Letter (July 4). These disputes are outstanding, and, notwithstanding the discovery deadline passing, Plaintiff intends to file a motion to compel responses, after a full record is developed through the completion of Mark Clemm's deposition, which remains continued as discussed further in Plaintiff's Motion to Compel Defendant Mark Clemm's Attendance and for Sanctions Pursuant to Rule 30(d)(2) and Rule 37(d), ECF 22. Contrary to Defendants' repeated assertion that "three sets of interrogatories directed at each defendant," only one set of interrogatories was served on each Defendant. Defs. Br. at 1 and 3, ECF 24-1 and 25-1.

During the 90-day discovery period, Defendants failed to serve any deposition notices, either against Plaintiff Sharon Lindsay or against third parties such as her siblings. On April 26, they served 40 requests for documents, 21 interrogatories, and 48 requests for admissions on Plaintiff.[5] Ex. I, Defendants' First Set of Discovery Requests. The interrogatories and requests for admissions were largely contention based, highly repetitive, and overly burdensome. Nevertheless, Plaintiff answered

---

[3] Those requests are attached as Exhibit B, Plaintiff's First Set of Interrogatories Directed to Defendant Mark Clemm; Exhibit C, Plaintiff's First Set of Interrogatories Directed to Defendant Katie Clemm; Exhibit D, Plaintiff's First Set of Interrogatories Directed to Defendant Clemm and Associates LLC; Exhibit E, Plaintiff's First Set of Document Requests Directed to All Defendants.

[4] Those notices can be found in the record at ECF 22-3 and ECF 22-4.

[5] Were the number of discovery requests even relevant, it is worth noting that Plaintiff has served a total of 30 interrogatories across three parties (13 to Mark Clemm, 14 to Katie Clemm, and 3 to Clemm and Associates) and 23 total document requests. *See* Exs. B, C, D, E. Plaintiffs' total requests amount to almost half the number of document requests and less than half the combined number of interrogatories and requests for admissions served by Defendants, all of which Plaintiff has dutifully and timely answered with no complaints of deficiencies by Defendants.

4

them diligently and timely. Ex. J, Plaintiff's Responses to Defendants' First Set of Discovery Requests. Defendants then sent a second set of discovery requests, including just a single document request and a single interrogatory on June 6. Ex. K, Defendants' Second Set of Discovery Requests. Plaintiff diligently and timely responded on July 8. Ex. L, Plaintiff's Responses to Defendants' Second Set of Discovery Requests.

On July 2, Plaintiff's counsel began the deposition of Defendant Mark Clemm. As discussed more fully in Plaintiff's motion to compel and for sanctions, Mr. Clemm abruptly left the deposition, forcing Plaintiff to continue it. *See generally* ECF 22-1. Plaintiff's counsel sent a follow-up letter on July 4 requesting Defendants propose times on July 8, 9, or 10 to continue the deposition in time for the discovery deadline. Ex. H, M. Clemm Deposition Follow-up Letter (July 4). Defendants' counsel promptly emailed that he was unavailable on those days, to which Plaintiff's counsel replied that he could agree to a date beyond July 10 if Defendants' counsel agreed to "waive any timeliness objections to a motion to compel filed within a week of the deposition and also waive any timeliness objections to a dispositive motion filed within two weeks of the deposition." Ex. M. Email Thread of July 4 and July 8.[6] Defendants' counsel responded with a request to extend all existing deadlines, to which Plaintiff's counsel indicated that we would reject "any wholesale extension of discovery and motion deadlines flowing from Mr. Clemm's non-compliance with Rule 30." Ex. M. On July 8, Defendants' counsel formally proposed a 30-day extension of discovery deadlines as "sufficient time for the parties to complete Mr. Clemm's deposition." Ex. M. Plaintiff's counsel rejected this and

---

[6] Plaintiff anticipates filing a motion to compel responses to several requests for the production of documents and for the proper production of ESI documents. Plaintiff intends to use part of the remaining deposition time to develop the record in support of the motion to compel.

With respect to the two-week dispositive motion request, the parties agreed in their Rule 26(f) report to file all dispositive motions within two weeks of the discovery deadline. ECF 15. Plaintiff similarly intends to use part of the remaining deposition time to develop the record in support of a dispositive motion.

renewed the offer to continue Mr. Clemm's still-open deposition after the discovery deadline provided the waiver of timeliness arguments as to Plaintiff's motions which might rely on it. Ex. M.

It was at this point, two days before the discovery deadline, that Defendants' counsel first communicated that Defendants were pressed by the discovery deadline, stating "We intend to take the depositions of the plaintiffs and to subpoena Mr. Steers for deposition." Ex. M. (They did not mention seeking discovery against non-party Patricia Steers at that time). When asked to clarify whether they were "declining to make Mr. Clemm available to continue his frustrated deposition until after the resolution of your motion to extend," Defendants' counsel ignored the question and instead complained about Plaintiff seeking clarification as to all the outstanding deficiencies at issue in Defendants' discovery thus far, stating "We will review your letter and get back to you. We are not dropping everything to meet your artificial deadlines. We are filing a motion to extend discovery as there is clearly not enough time to complete all tasks remaining in this case. You can oppose that motion but that is not going to make us move any quicker." Ex. M.

## II.   Argument

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The Rule 16(b)(4) good cause inquiry 'focuses on the diligence of the party seeking the modification of the scheduling order.' That is, if the moving party 'was not diligent, there is no 'good cause' for modifying the scheduling order.'" *Banks v. City of Philadelphia*, 309 F.R.D. 287, 290 (E.D. Pa. 2015) (quoting *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 701 (E.D. Pa. 2007)). *See* Fed. R. Civ. P. 16, advisory cmte. note (1983) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "Carelessness, or attorney error, which might constitute 'excusable neglect' under Rule 6(b), is insufficient to constitute "good cause" under Rule 16(b)." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701–02 (E.D. Pa. 2007); *see also Lehman Bros. Holdings v. Gateway Funding Diversified*

6

*Mortg. Servs., L.P.,* 785 F.3d 96 (3d Cir. 2015) (finding lack of good cause where counsel could have been more diligent in conducting discovery because "parties cannot 'avoid the consequences of the acts or omissions of their freely selected agents.'") (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)). Counsel's "miscalculation" as to the need of discovery from a known witness "does not constitute good cause sufficient to extend the discovery deadline." *Hazerci v. Tech. Educ. Servs., Inc.*, No. CIV. A. 08-1092, 2009 WL 1515742, at *2 (E.D. Pa. May 29, 2009).

Defendants' argument for good cause appears to be two-fold. First, that they weren't diligent in seeking and obtaining their own discovery in a case whose basic facts they've been litigating for over a year and a half. And second, that they are unable to diligently respond to Plaintiff's discovery, served over two months ago. Neither of these excuses counts as "good cause" under Rule 16(b)(4), and Defendants cite no caselaw that suggests that they should.

First, with regards to Defendants' own, purportedly new discovery, Defendants' lack of specificity as to what precise facts they intend to seek from Dwayne Steers and Patricia Steers reveals just how frivolous their arguments are. Notably, Defendants don't seem to be entirely sure themselves. Just two days prior to filing the present motion, on July 8, Defendants thought they needed Plaintiff Sharon Lindsay's testimony, not Patricia Steers's testimony. Ex. M, Email Thread of July 4 and July 8. Perhaps realizing that it would be absurd to claim they didn't know they should depose the Plaintiff herself until the last day of discovery, they changed tack. Now they seek the deposition of Patricia Steers, who signed a "consent" involved in the underlying loan transaction, but otherwise doesn't appear in the pleadings or record of this case. Nor, of course, is she mentioned in the discovery responses served on July 8. Defendants were entitled to seek Patricia Steers's deposition when discovery was open; nothing has changed in the facts or record that would justify delaying this case for them to seek it now.

7

Seeking a second deposition of Dwayne Steers is similarly unwarranted. Since the Complaint was filed and served over four months ago, Defendants have known the causes of action under which this case is brought. Indeed, they were served the Complaint before Mr. Steers' deposition was taken. ECF 4, 5, 6. If they thought Mr. Steers might have additional light to shed about how Defendants Mark and Katie Clemm use their association-in-fact enterprise of closely-held companies to collect usurious interest under RICO or use misrepresentations to collect that usurious debt in violation of state law, they could have served him with a deposition notice any time in the last 90 days. They chose not to. Although Mr. Steers's knowledge about the intended purpose and use of the proceeds of the loan is relevant to whether the loan is usurious or not, Defendant Mark Clemm has already explored that subject thoroughly in the previous deposition. Ex. A, Dwayne Steers Dep. (Feb. 27, 2024) 32:15-33:4; 62:21-63:14; 65:8-15; 77:4-78:22. While Defendants may not like the answers to those questions, that does not entitle them to subject him to a second deposition retreading all the same ground, after the Court's discovery deadline has passed.

Defendants also raise the discovery responses served on July 8 as some sort of justification for their belated motion. But those responses are a red herring, underlined by the fact that Defendants neither explain nor attach the contents of those responses nor explain what new information those responses provide which justifies an extension. That is because those responses provide no justification for extending the discovery deadlines. The additional interrogatory requested Plaintiff to "[i]dentify the current whereabouts of Dwayne Steers's documents regarding the Loan." Ex. L, Plaintiff's Responses to Defendants' Second Set of Interrogatories at No. 22. Plaintiff believes this question derives from a line of questioning at Mr. Steers's deposition in the state court proceedings, where he testified that all of his belongings, including any documents, related to his time in Philadelphia were stored in Ms. Parkin's basement and that he learned that Plaintiff Sharon Lindsay cleaned out the basement soon after the foreclosure action was filed. Steers Dep. 14:2-18;

58:8-21; 59:2-60:25; 82:12-21. Defendants knew about this in February when they took his deposition. They waited until June 6 to serve discovery upon Ms. Lindsay regarding these putative documents, and Ms. Lindsay timely responded on July 8 that she was unaware whether any such documents actually existed, but that she did in fact clean out the basement in the month after the foreclosure filing on the assumption that her mother would soon have to sell the house and move. Ex. L, Plaintiffs' Responses to Defendants Second Set of Discovery Requests at No. 22. Mr. Steers has already been deposed about this. And there is no indication in the record that his sister, Patricia Steers, was involved either with his documents or the house cleaning. The Court should ignore Defendants' efforts to justify these responses as a lever to reopen discovery.[7]

Defendants' second proffered reason for an extension—that they have been unable to respond to Plaintiff's modest discovery requests in a timely manner—also does not constitute "good cause" under Rule 16(b)(4). Defendants' discovery deficiencies do not reflect "diligence" but instead its opposite. Defendants have attempted to use Defendant Mark Clemm's decision to walk out of his timely noticed and held deposition, without any protest from his counsel, as a bargaining chip to get Plaintiff to agree to extending the discovery deadlines. Plaintiff rejected this gamesmanship from the outset. *See* Ex. M, Email Thread of July 4 and July 8 ("While we'll certainly listen to any proposals, we will be hesitant to agree to any wholesale extension of discovery and motion deadlines

---

[7] Defendants' other request was a document request for "[a]ll documents and communications showing how the Loan proceeds were used." Ex. K, Defendants' Second Set of Requests for Production of Documents at No. 1. This document request is apparently targeted at the requirement under Pennsylvania law that a "business loan" be supported by an affidavit, signed by the borrower "under penalty of perjury," "setting forth the intended use of the proceeds" in a "business enterprise" controlled by the borrower. 10 Pa. Code § 7.2. Defendants were aware of the relevance of this request at the time that the Complaint was served and discovery opened and could have served it far earlier. Regardless, Ms. Lindsay's response that the only documents she has, including Mr. Steers's deposition testimony, were already in Defendants' possession, provides no basis for additional discovery, nor do Defendants bother explaining how it might. Ex. L, Plaintiff's Responses to Defendants' Second Set of Requests for Production of Documents at No. 1.

flowing from Mr. Clemm's non-compliance with Rule 30." (July 4, 2024)); *id.* ("Plaintiff is unwilling to reopen all discovery for 30 days on the basis of Mr. Clemm's frustration of the properly noticed deposition on July 2." (July 8, 2024)). Defendants should not be rewarded for obnoxious and vexatious litigation behavior—particularly when that behavior was carried out by a defendant who is also an attorney admitted to practice in this Court—nor should they be permitted to bootstrap their own deficiencies into "good cause."

Similarly, Defendants' complaints about the "Clemm parties … diligently working to respond to three sets of interrogatories directed at each of them and 23 separate document requests" both misstate the record and are without merit. Defs. Br. at 3, ECF 24-1 and 25-1. As noted above, Plaintiff has served a single set of interrogatories to each of the three Defendants along with a single set of requests for production of documents, served over 77 days ago, on April 24. *See* Exs. B, C, D, E. Plaintiff has raised several deficiencies, largely related to Defendants refusal to produce plainly relevant and proportionate documents related to the business operations and cash flows of the business entities that comprise the alleged RICO enterprise and a proper format for the production of ESI, most of which Defendants have failed to cure. *See* Ex. F, Discovery Deficiency Letter (June 11); Ex. G, Meet and Confer Follow-up Letter (June 20). Following the deposition of Mark Clemm, Plaintiff's counsel identified how Mr. Clemm's deposition impacted those disputes, including (1) continuing problems caused by the deficient ESI format, (2) the newly revealed existence of specific and plainly relevant policy documents that Mr. Clemm used to set the terms of his loans without regard to borrower ability to pay and which Defendants refuse to produce, and (3) whether Defendants would be producing additional documents or ESI that would explain the discrepancy between the metadata creation date and the face date on a recently produced engagement letter so as to help clear Defendants of any untoward suspicions of falsifying discovery documents. Ex. H, M. Clemm Deposition Follow-up Letter (July 4). When Plaintiff's counsel emailed requesting

clarification as to "when can we expect responses on the other items raised in my letter last week, including the protective order, the engagement letter, the continuing document production deficiency, and the 'loan program summary' document?," Defendants' counsel replied that "We will review your letter and get back to you. We are not dropping everything to meet your artificial deadlines. We are filing a motion to extend discovery as there is clearly not enough time to complete all tasks remaining in this case. You can oppose that motion but that is not going to make us move any quicker." Ex. M, Email Thread of July 4 and July 8. "All the tasks remaining in this case" related to discovery are products of Defendants carelessness, negligence, and lack of diligence. All the discovery being disputed was requested well over two months ago. Plaintiffs will file a motion to compel after Mr. Clemm's deposition is completed. It would be inappropriate to grant Defendants the benefit of delaying the case further by creating deficiencies giving cause to Plaintiff's motion to compel.

Defendants have made clear from the outset of this case that their principal strategy in this litigation is to delay it long enough to get a verdict in the parallel state court case. *See* Answer at Affirmative Defenses ¶ 6, ECF 9; Rule 26(f) Report at 4, ECF 15. These efforts have been capped off by their baseless motion to remove the case from the arbitration track, ECF 17, their meritless and unsupported summary judgment motion, ECF 20, Mr. Clemm's unilateral termination of his deposition, ECF 22, and now this motion, ECF 24 and 25. Whether that strategy is a wise one remains to be seen. Nevertheless, Defendants' "diligence" in attempting to frustrate and delay these proceedings, even if successful, does not reflect the diligence required by Rule 16(b)(4). It does not constitute "good cause" under the rule and Defendants' motion should be denied.

## III.   Conclusion

The discovery record, which Defendants fail to cite or attach, clearly demonstrates that Defendants cannot demonstrate the "due diligence" required by Rule 16(b)(4) to extend discovery

deadlines here. Wherefore, Plaintiff respectfully requests the Court deny Defendants' motion to extend the discovery deadlines.

| | |
|---|---|
| Date: July 11, 2024 | /s/ *David Nagdeman* |
| | LANGER, GROGAN & DIVER P.C. |
| | David Nagdeman, Esq. |
| | dnagdeman@langergrogan.com |
| | Irv Ackelsberg, Esq. |
| | iackelsberg@langergrogan.com |
| | 1717 Arch St., Ste 4020 |
| | Philadelphia, PA 19103 |
| | (215) 320-5660 |
| | *Attorneys for Plaintiff* |

**Certificate of Service**

I certify that on this day I caused a true and correct copy of the foregoing Response in Opposition to Defendants' Motion to Extend the Discovery Deadlines on counsel for Defendants by means of this Court's ECF system.

Dated: July 11, 2024                                                       /s/ *David Nagdeman*
                                                                                                David Nagdeman